PAUL F. SILVA *vs.* CITY OF ATTLEBORO & others.[1]

No. 07-P-488.

Bristol. January 18, 2008. - August 27, 2008.

Present: CYPHER, BROWN, & GRAHAM, JJ.

Further appellate review granted, 452 Mass. 1106 (2008).

*Funeral Director. Dead Body. Municipal Corporations,* Fees. *Taxation.*

A Superior Court judge erred in holding that monetary charges imposed by several cities for issuance of burial permits constituted proper fees rather than improper taxes, where the charges, despite being reasonable and intended to cover the expenses incurred by the cities in issuing burial permits, were involuntary in a way that was distinct from the typical regulatory fee, and where the issuance of burial permits conferred a shared public benefit. [451-455]

CIVIL ACTION commenced in the Superior Court Department on April 27, 2005.

The case was heard by *Richard J. Chin,* J., on an agreed statement of facts.

*Martin A. Silva* for the plaintiff.

*Robert S. Mangiaratti* for city of Attleboro.

*Steven A. Torres,* City Solicitor, for city of Taunton, was present but did not argue.

*Anthony A. Kamara,* for city of New Bedford, was present but did not argue.

CYPHER, J. We are asked, again, to determine whether a monetary charge by each of the defendant cities for the issuance of a burial permit is a valid fee or an improper tax.[2] The plaintiff, Paul F. Silva, is a licensed funeral director who performs funeral

---

[1] The city of New Bedford and the city of Taunton.

[2] "Every dead body of a human being dying within the Commonwealth must be buried, entombed, or cremated within a reasonable period of time after death. G. L. c. 114, § 43M." *Silva* v. *Fall River,* 59 Mass. App. Ct. 798, 799 (2003).

services in communities generally in Bristol County. He appeals from a Superior Court judgment holding, after a bench trial, that the burial permit charge is a proper fee.

Silva previously challenged the charge exacted for a burial permit by the city of Fall River in *Silva* v. *Fall River*, 59 Mass. App. Ct. 798 (2003). In that case, we concluded that the "burial permit charge is better characterized as a tax than a fee because the payer of the fee derives no benefit that is not shared by the general public, proper interment is mandatory, the burial permit is mandatory, and it does not appear in the record that the funds are used to defray the cost of enforcing relevant regulations." *Id.* at 807.

In the present case, the defendant cities and Silva cured the procedural defect in *Silva* v. *Fall River* by providing the judge with an agreed statement of facts. The judge determined that the present case is distinguishable from the earlier case, largely because the "[three] cities incur significant costs in fulfilling their statutory duty of issuing burial permits." The judge concluded that "[b]ased on the evidence, this court finds that the plaintiff has not met his burden of proving that the burial permit charge is a tax and not a fee."

Silva contends that the burial permit charges by the defendant cities are unconstitutional taxes when analyzed according to the factors distinguishing a fee from a tax as stated in *Emerson College* v. *Boston*, 391 Mass. 415, 424-425 (1984). Silva argues that the judge erred in applying those factors, ignoring factors one and two and giving undue preference to factor three. The defendant cities argue that the charge is a valid regulatory fee[3] and that factor three of the *Emerson College* test should receive particular emphasis.

The test for distinguishing between a tax and a fee was set forth in the case of *Emerson College, id.* at 424-425. Legitimate

[3] "Fees imposed by a governmental entity tend to fall into one of two principal categories: user fees, based on the rights of the entity as proprietor of the instrumentalities used, *Opinion of the Justices*, 250 Mass. 591, 597 (1924), or regulatory fees (including licensing and inspection fees), founded on the police power to regulate particular businesses or activities, *id.* at 602." *Emerson College* v. *Boston, supra* at 424. See *Southview Co-op. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 402 (1985); *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 201-202 (1995).

fees are (1) "charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society' "; (2) "paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge"; and (3) "collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." *Ibid.*, quoting from *National Cable Television Assn.* v. *United States*, 415 U.S. 336, 341 (1974).

Because the only relevant difference between the instant case and *Silva* v. *Fall River, supra,* is the inclusion of the relationship between the charges and the cost of providing the permit, the judge correctly adopted the reasoning expressed in *Silva* v. *Fall River* regarding factors one and two, that the charge by the cities did not benefit Silva in a manner not shared by the general public and that the charge could not be avoided. *Id.* at 804-805.[4] Accordingly, we focus our attention on factor three and the weight it should carry.

1. *Charges as compensation for the governmental entity or to raise revenues.* The third factor states that a fee is a charge "collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." *Emerson College* v. *Boston*, 391 Mass. at 425. Here, the judge concluded that the cities "produced evidence to show that they incur expenses in issuing burial permits . . . [and] have further shown that the fee charged is reasonable and is used to cover these expenses."[5]

---

[4]The fact that other towns do not charge for burial permits is not relevant to our discussion. *Silva* v. *Fall River*, 59 Mass. App. Ct. at 799 n.4. The board of health of the town where the person died must issue the permit. G. L. c. 114, § 45, as amended by St. 2004, c. 120, § 2. Randall & Franklin, Municipal Law and Practice § 19.16 (5th ed. 2006). Thus, those in charge of disposing of the remains of a person who died in Attleboro, New Bedford, or Taunton must pay the charge. *Silva* v. *Fall River, supra* at 804-805.

[5]Attleboro charges ten dollars and issues approximately 300 burial permits per year. The total fees collected constitute less than two one-hundredths of one per cent of the approximately $2 million annual budget of the health department.

New Bedford charges twenty dollars, and in fiscal year 2006 issued 1,226 burial permits. Total fees collected were 1.24 per cent of the health department's budget.

Taunton charges ten dollars, and in fiscal year 2005 issued 564 burial permits. Total fees collected were less than one per cent of the fiscal year 2006 health department budget of over $572,000.

"A license fee may be exacted as a part of or incidental to regulations established in the exercise of the police power. Such a fee commonly is commensurate with the reasonable expenses incident to the licensing and all that can rationally be thought to be connected therewith. The amount of the fees in such connection doubtless would not be scrutinized too curiously even if some incidental revenue were obtained." *Opinion of the Justices,* 250 Mass. 591, 602 (1924).

"We have long held that a municipality required by statute to participate in a scheme established by statute is entitled to 'cover reasonable expenses incident to the enforcement of the rules.' *Southview Co-op. Hous. Corp.* v. *Rent Control Bd. of Cambridge,* 396 Mass. 395, 400 (1985), quoting [from] *Commonwealth* v. *Plaisted,* 148 Mass. 375, 382 (1889)." *Boston Gas Co.* v. *Newton,* 425 Mass. 697, 706 (1997).

Unlike *Silva* v. *Fall River,* 59 Mass. App. Ct. at 805-807, there is ample evidence in the present case to show that the charges collected were for compensation and not for the general raising of revenue. The plaintiff does not argue that the amounts of the fees charged by the defendants are unreasonable, or that the amounts collected constitute excessive recovery in relation to the total budgets of their boards of health. Because we have found no authority, nor has any been suggested to us, which requires a specific accounting of the cost of processing a permit, we conclude that the fees collected in the present case, although deposited in general funds of the cities, were charged not to raise revenue, but to compensate for the expenses in issuing the permits. The judge did not err in finding that the charges were reasonable and used to cover expenses incurred in issuing burial permits.

2. *Weighing of the three factors.* Despite having found in favor of the plaintiff on two out of three of the *Emerson College* factors, the judge concluded that factor three alone was sufficient for the defendants to prevail. See *Emerson College* v. *Boston,* 391 Mass. at 424-425. In making his final determination, the judge distinguished this case from *Silva* v. *Fall River, supra,* where there was no evidence at all to establish that Fall River incurred expenses in issuing, processing, and regulating burial permits. In discussing that case, the judge asserted, "The *Silva* court explicitly stated that Fall River would have been

justified in charging the ten dollar fee if it showed that it was used to cover their costs, rather than to raise general revenue. *Id.* at 805." Careful reading of that earlier case does not suggest this conclusion. In fact, the *Silva* v. *Fall River* court considered all three of the *Emerson College* factors in determining the burial permit charge to be a tax:

> "We think that the burial permit charge is better character-ized as a tax than a fee because the payer of the fee derives no benefit that is not shared by the general public, proper interment is mandatory, and it does not appear in the record that the funds are used to defray the cost of enforcing the relevant regulations."

*Silva* v. *Fall River*, 59 Mass. App. Ct. at 807.

The defendants argue that when a challenged charge is regu-latory in nature, as here, emphasis in the analysis should be placed on the third *Emerson College* factor. They rely primarily on two cases decided by the Supreme Judicial Court after *Emerson College* that concerned the issue of regulatory as op-posed to proprietary fees. The defendants argue that the judge was primarily focused on the third factor and that he disregarded the first two factors when he decided the charges were regula-tory fees. We do not agree with this interpretation. Rather than minimize or disregard the first two factors, the Supreme Judicial Court found them to be satisfied in those two cases.

In the first case, *Southview Co-op. Hous. Corp.* v. *Rent Con-trol Bd. of Cambridge*, 396 Mass. 395 (1985), the court con-sidered a regulatory fee charged by a municipal rent control board. Landlords objected to the fee, which was charged in con-nection with petitions for individual rent adjustments. Regard-ing factor one, the court found that "[t]he services for which the fees are imposed are . . . 'sufficiently particularized as to justify distribution of the costs among a limited group . . . rather than the general public.' " *Id.* at 402, quoting from *Emerson College* v. *Boston, supra* at 425. Regarding factor two, the court ruled, "[A]lthough it is true . . . [that the landlords] must pay the fees, the fees are nevertheless imposed only on those who choose to utilize a particular governmental service." *Ibid.* Rather than de-emphasize the first two factors, the court appropriately weighed them.

In the second case, *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196 (1995), the plaintiff objected to a regulatory fee imposed by the defendant board on businesses that produced radioactive waste. Regarding the first factor, the court held, "[T]he board's services provide a 'sufficiently particularized' benefit to the plaintiff to qualify as a valid fee. While the safe disposal of radioactive waste is a public benefit, . . . it is the plaintiff (and not the general public) which requires access to disposal facilities . . . ." *Id.* at 204. Regarding the second factor, the court stated, "The plaintiff is not 'compelled' to pay the fee, even though it must pay the fee so long as it engages in manufacturing activities in the Commonwealth that produce as a byproduct low-level radioactive waste." *Id.* at 205. Again, the fee was targeted at a specific group engaged in a particular business, and the voluntariness factor was defined as merely the choice to engage in the regulated activity. *Id.* at 205-206. In both of these cases, all three factors were considered, which supported the conclusion that the charges were valid regulatory fees.

The present case is distinguishable simply because the defendants have satisfied only the third factor, as the judge found. We can find no support for the proposition that extra emphasis should be placed on the third factor when the challenged charge is regulatory in nature. Nor can we find any support for the idea that factor three should overrule the other two factors. We do note, however, that if the first factor applies, the second factor is of less importance. *Boston Gas Co.* v. *Newton*, 425 Mass. at 706 n.19.

A municipality should not be able to justify an otherwise invalid tax merely by providing an accounting of expenses. While this is one factor in the analysis, all three factors have to be considered and weighed. As discussed above, there is no question that the issuance of burial permits has a shared public benefit and that the services provided are involuntary in a way that is distinct from the typical regulatory fee. We think that the combined weight of these two factors overcomes the third factor in this case and that the burial permit charges are not regulatory fees, but rather improper taxes.

*Judgment reversed.*