PAUL F. SILVA *vs.* CITY OF ATTLEBORO & others.[1]

Bristol. April 6, 2009. - June 26, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Funeral Director. Dead Body. Municipal Corporations,* Fees. *Taxation.*

A Superior Court judge did not err in holding that monetary charges imposed by certain municipalities for the issuance of burial permits were valid regulatory fees rather than improper taxes, where the charges were reasonably proportional to the amounts expended by the local boards of health in administering the permit process, and were charged in exchange for a particular governmental service benefiting the party paying the charge, that is, a well-regulated industry for the disposal of human remains. [167-173]

CIVIL ACTION commenced in the Superior Court Department on April 27, 2005.

The case was heard by *Richard J. Chin,* J., on an agreed statement of facts.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Irene B. Schall* for city of New Bedford.

*Robert S. Mangiaratti* for city of Attleboro.

*Martin A. Silva* for the plaintiff.

*Steven A. Torres,* City Solicitor, & *Jane E. Estey,* Assistant City Solicitor, for city of Taunton, submitted a brief.

*Martha Coakley,* Attorney General, & *Peter Sacks,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

*Juliana deHaan Rice,* Town Counsel, & *Thomas J. Urbelis,* for City Solicitors & Town Counsel Association, amicus curiae, submitted a brief.

COWIN, J. In this case, we are asked to consider whether a charge assessed by certain municipalities for the issuance of a

[1]The city of New Bedford and the city of Taunton.

burial permit is a lawful fee or an unlawful tax. The Appeals Court, applying our decision in *Emerson College* v. *Boston*, 391 Mass. 415 (1984) (*Emerson College*), held that the burial permit charge was an unlawful tax. See *Silva* v. *Attleboro*, 72 Mass. App. Ct. 450, 455 (2008). We conclude that it is a valid regulatory fee.

*Background.* General Laws c. 114, § 45, requires that any funeral director seeking to dispose of the body of a deceased person must obtain a burial permit from the board of health or the clerk of the municipality in which the decedent died. The statute requires that a person seeking the burial permit must present both a death certificate and "a satisfactory written statement containing the facts required by law to be returned and recorded" in order for the burial permit to issue. The municipality must issue the burial permit upon receipt of the statement and certificate required by the statute. See *id.* Some municipalities, including the defendants, exact a monetary charge to issue these burial permits. These amounts are deposited in each of the defendants' general revenue funds. The amounts constitute a relatively small portion of the budget of each defendant's board of health, and are roughly proportional to the cost of compensating municipal employees for their time in receiving and examining the death certificates, issuing the burial permits, and record-keeping associated with the process.

The plaintiff is a licensed funeral director operating his business in the city of Fall River and surrounding communities throughout Bristol County. He brought this action seeking declaratory and injunctive relief against the defendants, claiming that the burial permit fees are illegal taxes.[2] After a jury-waived trial, a Superior Court judge ruled for the defendants. Applying the Appeals Court's decision in *Silva* v. *Fall River*, 59 Mass. App. Ct. 798, 807 (2003), see note 2, *supra*, the judge concluded that the burial permit charges are not exacted in exchange for any particularized benefit that is not also provided to other members

_____

[2]The plaintiff previously brought a similar action against the city of Fall River. On appeal, the Appeals Court, also relying on *Emerson College* v. *Boston*, 391 Mass. 415, 424-425 (1984), concluded that the summary judgment record established that Fall River's burial permit charges were unlawful taxes. See *Silva* v. *Fall River*, 59 Mass. App. Ct. 798, 807 (2003).

of the community. He also decided that payment of the charges was mandatory rather than voluntary. The judge found, however, that the defendants "incurred significant expenses in issuing, processing and regulating burial permits," and that "the fee charged is reasonable and is used to cover these expenses." He therefore concluded that the burial permit charges were permissible fees intended to defray costs associated with the permit process and were not unlawful taxes.

As stated, the Appeals Court reversed. See *Silva* v. *Attleboro*, *supra* at 455. That court determined that the judge had given improper weight to the fact that the burial permit charges were reasonably proportional to the costs incurred by the defendants. *Id.* Because "the issuance of burial permits has a shared public benefit and . . . the services provided are involuntary in a way that is distinct from the typical regulatory fee," the Appeals Court held that the burial permit charges were not valid regulatory fees but improper taxes. *Id.* We granted further appellate review.[3,4] We affirm the Superior Court judgment.[5]

*Discussion.* We accept the judge's findings of fact unless there is clear error. See *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976). However, "we scrutinize without deference the legal standard which the judge applied to the facts." *Kendall* v.

[3]The city of Taunton did not apply for further appellate review, and the adjudication of its rights are thus not before us. See *Bradford* v. *Baystate Med. Ctr.*, 415 Mass. 202, 205 (1993).

[4]The record does not show that the plaintiff has presently been assessed burial permit charges by any of the defendants. None of the parties has addressed the question whether a justiciable controversy exists for the purposes of the declaratory judgment statute. We hesitate to reach an issue where the potential harm to the plaintiff is merely speculative or hypothetical. See *Supreme Council of the Royal Arcanum* v. *State Tax Comm'n*, 358 Mass. 111, 113 (1970). However, the record in this case indicates that the plaintiff sometimes provides burial arrangements for those who reside in Fall River but die in the defendant municipalities, and that the defendants regularly exact burial permit charges from such providers. Even were we to conclude that the question is not properly before us, we have discretion to consider it. The question has been fully briefed and is likely to arise again, the opposing interests are adequately represented, the relevant facts are not in dispute, and judicial resolution will put this controversy to rest. See *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738, 745 (2003); *Newton* v. *Department of Public Utils.*, 367 Mass. 667, 669 (1975).

[5]We acknowledge the amicus briefs of the Attorney General and the City Solicitors and Town Counsel Association.

*Selvaggio,* 413 Mass. 619, 621 (1992). "A municipality does not have the power to levy, assess, or collect a tax unless the power to do so in a particular instance is granted by the Legislature." *Commonwealth* v. *Caldwell,* 25 Mass. App. Ct. 91, 92 (1987). See *Opinion of the Justices,* 378 Mass. 802, 810 n.10 (1979), citing art. 2 of the Amendments to the Massachusetts Constitution, as appearing in art. 89, §§ 1, 6 and 7 ("Cities and towns have no independent power of taxation"). The plaintiff has the burden of proving the invalidity of the exaction. See *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.,* 421 Mass. 196, 201 (1995) (*Nuclear Metals*); *Southview Coop. Hous. Corp.* v. *Rent Control Bd. of Cambridge,* 396 Mass. 395, 403 (1985) (*Southview*). Although we give some deference to the defendants' classification of the burial permit charge as a fee, "[u]ltimately" the nature of a monetary exaction "must be determined by its operation rather than its specially descriptive phrase." *Emerson College, supra* at 424, quoting *Thomson Elec. Welding Co.* v. *Commonwealth,* 275 Mass. 426, 429 (1931).

In distinguishing fees from taxes, we have noted that fees tend to share common traits. Fees, unlike taxes, "are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society.' " *Emerson College, supra,* quoting *National Cable Television Ass'n* v. *United States,* 415 U.S. 336, 341 (1974). Fees "are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge." *Emerson College, supra* at 424-425. Finally, the charges "are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." *Id.* at 425. Valid fees fall into one of two categories: "user fees, based on the rights of the entity as proprietor of the instrumentalities used . . . or regulatory fees (including licensing and inspection fees), founded on the police power to regulate particular businesses or activities." *Id.* at 424, citing *Opinion of the Justices,* 250 Mass. 591, 597, 602 (1925).

The plaintiff argues that the burial permit charges are not fees, but are rather taxes that the defendants lack statutory or constitutional authority to levy. Relying on *Emerson College, supra* at 424-425, and *Silva* v. *Fall River,* 59 Mass. App. Ct.

798, 807 (2003), the plaintiff argues that the burial permit fees lack the essential characteristics of fees because, according to the analysis prescribed in the *Emerson College* decision, the charges are not exacted in exchange for a particular governmental service that benefits the permit seeker in a manner not shared by other members of society; they are not voluntarily incurred because a burial permit is required for the plaintiff to dispose of a body in a lawful manner; and they are not charged in order to compensate the municipalities for their expenses, but rather are intended to raise general revenue because the proceeds are deposited into the general fund of each of the defendants.

We do not agree. Although a municipality has no independent power of taxation, it may assess, levy, and collect fees when the Legislature has authorized it to do so, provided that those fees are reasonable and proportional.[6] See *Commonwealth* v. *Caldwell, supra.* Here, the defendants are required to issue the burial permits in question pursuant to G. L. c. 114, § 45, and are authorized, pursuant to G. L. c. 40, § 22F, to defray these expenses by charging a reasonable fee. In pertinent part, the latter statute provides:

> "Any municipal board or officer empowered to issue a license, permit, certificate, or to render a service or perform work for a person or class of persons, may, from time to time, fix reasonable fees for all such licenses, permits, or certificates issued pursuant to statutes or regulations wherein the entire proceeds of the fee remain with such issuing city or town, and may fix reasonable charges to be paid for any services rendered or work performed by the city or town or any department thereof, for any person or class of persons . . . ."[7]

---

[6]The Legislature is empowered "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the . . . [C]ommonwealth." Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. *Opinion of the Justices*, 220 Mass. 613, 618-619 (1915). Compare *C & S Wholesale Grocers, Inc.* v. *Westfield*, 436 Mass. 459, 461-464 (2002) (considering whether imposition of tax by municipality on real property improvements was excessive and disproportionate), with *Sears* v. *Aldermen of Boston*, 173 Mass. 71, 75-79 (1899) (considering whether municipal assessment for watering of city streets is proportional and reasonable).

[7]The provisions of the statute "may be accepted in a city by a vote of the city council, with the approval of the mayor if so required by law, and in a

G. L. c. 40, § 22F. The trial judge found that the defendants incur significant expenses in issuing said permits, and the evidence supports his finding. The parties stipulated in their statements of agreed facts that the amounts charged by the defendants for the issuance of burial permits are reasonably proportional to the amounts expended by their boards of health in administering the permit process. All the statutory conditions required under G. L. c. 40, § 22F, have therefore been satisfied.[8]

In addition, the reasoned application of the factors discussed in *Emerson College,* and subsequent cases demonstrates that the burial permit charges are valid regulatory fees, not taxes. As to the first factor, we are not persuaded that funeral directors who pay the burial permit charges receive no special benefit that other members of society do not. Contrast *Silva* v. *Fall River, supra* at 802-804. We have long held that the Legislature may authorize a municipality to impose a reasonable fee to defray the cost of issuing a license that the municipality lawfully requires for one to engage in a particular activity. See *Southview, supra* at 398-402; *Commonwealth* v. *Plaisted,* 148 Mass. 375, 382 (1889). The Appeals Court's analysis in this case overlooks a crucial distinction between proprietary fees and regulatory fees, i.e., that the particularized benefit provided in exchange for the latter is the existence of the regulatory scheme whose costs the fee serves to defray. Regulatory fees are founded on the State's police power to regulate a particular activity or business, *Emer-*

town by vote of the town meeting, or by vote of the town council in towns with no town meeting." G. L. c. 40, § 22F. There is no dispute that the defendants have adopted § 22F.

[8]Both New Bedford and Taunton argued in their briefs to the Appeals Court that the burial permit charges are permissible because they are authorized by G. L. c. 40, § 22F. New Bedford has renewed this argument in its brief here. By contrast, Attleboro did not argue this point to the Appeals Court and, as we have mentioned, see note 3, *supra,* Taunton did not apply for further appellate review in this case. However, there is no logical reason why our conclusion that the burial permit charges are lawful fees authorized by the statute should not apply to all the defendants. "[T]he issues raised here present only questions of law," the relevant facts are identical with respect to each of the defendants, the plaintiff has responded to the § 22F argument in his briefs, and the issue "implicate[s] the [power] of numerous [municipalities]" to impose fees for the issuance of required permits and licenses. See *Altschuler* v. *Boston Rent Bd.,* 12 Mass. App. Ct. 452, 460 (1981), *S.C.,* 386 Mass. 1009 (1982).

*son College, supra* at 424, and serve regulatory purposes either "directly by, for example, deliberately discouraging particular conduct by making it more expensive," or indirectly by defraying an agency's regulation-related expenses. *Nuclear Metals, supra* at 201-202, quoting *San Juan Cellular Tel. Co. v. Public Serv. Comm'n of P.R.*, 967 F.2d 683, 685 (1st Cir. 1992).

The burial permit charges are regulatory fees, not proprietary fees. These charges are founded upon the State's police power to regulate the disposal of dead bodies in a manner that preserves the public health, safety and welfare. See *Wyeth* v. *Board of Health of Cambridge*, 200 Mass. 474, 479 (1909). They are not exacted in exchange for the use of the defendants' property, but are "imposed by an agency upon those subject to its regulation." *Nuclear Metals, supra* at 201, quoting *San Juan Cellular Tel. Co. v. Public Serv. Comm'n of P.R., supra.* In exchange for payment of the burial permit charges, funeral directors and their clients (on whose behalf the former act) receive particularized benefits in the form of a well-regulated industry for the disposal of human remains. The administration of the burial permit process by municipal boards of health provides assurances that the decedent's body is disposed of properly. The process also helps to police the industry by allowing the board of health to ensure that funeral directors have complied with applicable regulations governing the disposition of human remains and to take action against those who do not. Law-abiding funeral directors are thus spared from having to compete at a disadvantage against those who flaunt the rules governing their profession. See *Nuclear Metals, supra* at 204-205.

We turn our attention to the second *Emerson College* factor, voluntariness. *Emerson College, supra* at 424-425. We conclude that the Appeals Court erred in applying this criterion to the present case, and that the role of the voluntariness factor in *Emerson College* is limited to the particular factual context of that case. The *Emerson College* decision dealt with purported proprietary fees in the form of assessments of certain large buildings for augmented fire services. See *id.* at 419-423, 425. The burial permit charges at issue here, however, are regulatory rather than proprietary in nature. The second factor of the *Emerson College* decision should not be understood as having described the

essential characteristics shared by all fees, both regulatory and proprietary. Nothing in that case suggests that whether a charge is incurred voluntarily is relevant in the regulatory fee context.

Massachusetts cases decided since *Emerson College*, which we cite in the margin,[9] have consistently given less weight to the voluntariness factor. Other jurisdictions have abandoned it as unhelpful in determining whether a charge is a fee or a tax, in part because "citizens routinely incur different levels of compulsory taxation based on the voluntary choices they make." *Hill* v. *Kemp*, 478 F.3d 1236, 1252-1253 (10th Cir. 2007), cert. denied, 128 S. Ct. 873, 884 (2008). An alternative test to that discussed in *Emerson College* focuses instead on "whether the charge (1) applies to the direct beneficiary of a particular service, (2) is allocated directly to defraying the costs of providing the service, and (3) is reasonably proportionate to the benefit received." *State* v. *Medeiros*, 89 Haw. 361, 367 (1999). We need not consider whether to follow the courts of these jurisdictions with respect to proprietary charges. We decide only that, although relevant in the context of proprietary fees, the question whether a regulatory charge is voluntarily incurred is of no relevance in determining whether that charge is a fee or a tax.

Finally, the plaintiff argues, as mentioned, that the burial permit charges lack the third characteristic of permissible fees described in *Emerson College*, i.e., that the charges are revenue-raising rather than compensatory because the proceeds are

---

[9]See *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 206 (1995) (in regulatory fee context, "element of choice is not a compelling consideration which can be used to invalidate an otherwise legitimate charge"); *Bertone* v. *Department of Public Utils.*, 411 Mass. 536, 549 (1992) (fees are not taxes even if they must be paid in order to enjoy right to develop one's land); *Southview Coop. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 402 (1985) (although landlords who believe they are not receiving fair rents and want individual rent adjustments must pay fees, "[s]uch charges, if reasonably calculated to do nothing more than compensate a governmental agency for its services, are fees, not taxes, even though they must be paid in order that a right may be enjoyed"); *Baker* v. *Department of Envtl. Protection*, 39 Mass. App. Ct. 444, 446 (1995) ("The requirement of choice does not focus on whether it is purely voluntary, but whether the charge benefits those regulated in a manner distinguishable from the benefits at large"); *Berry* v. *Danvers*, 34 Mass. App. Ct. 507, 512 n.6 (1993) (voluntariness factor is "arguably only subsidiary to, and an additional manifestation of, the analytically more comprehensive first factor, particularized private rather than general public benefit").

deposited into each defendant's general fund. See *Emerson College, supra* at 425. That the amounts collected from the receipt of burial permit charges are deposited in a general fund instead of a fund for a particular purpose "is of weight in indicating that the charge is a tax," but it is "not decisive." *Id.* at 427, quoting P. Nichols, Taxation in Massachusetts 7 (3d ed. 1938). Accord *WB&T Mtge. Co.* v. *Assessors of Boston*, 451 Mass. 716, 720 (2008). However, "the critical question is whether the [burial permit] charges [are] reasonably designed to compensate" the board of health for its anticipated regulation-related expenses. *Southview, supra* at 404. See *Baker* v. *Department of Envtl. Protection*, 39 Mass. App. Ct. 444, 446-447 (1995). As discussed previously, the evidence in the record clearly supports the conclusion that the amounts of the burial permit charges are reasonably proportional to those expended by the boards of health in administering the permit process. The Appeals Court correctly concluded that "there is ample evidence in the present case to show that the charges collected were for compensation and not for the general raising of revenue." *Silva* v. *Attleboro*, 72 Mass. App. Ct. 450, 453 (2008).

*Judgment affirmed.*