SANDRA MURPHY & others,[1] beneficiaries,[2] & another[3] vs.
MASSACHUSETTS TURNPIKE AUTHORITY.

Middlesex. March 6, 2012. - July 12, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Turnpike Authority. Constitutional Law,* Taxation.

In a civil action against the Massachusetts Turnpike Authority (authority),
brought by five Massachusetts residents who had paid tolls on the
Metropolitan Highway System (MHS) for at least five years, contending
that tolls collected from drivers traveling on the Boston extension of the
Massachusetts Turnpike and through tolled tunnels were unconstitutional to
the extent the tolls were spent on nontolled portions of the MHS, the judge
properly allowed the authority's motion to dismiss, where such tolls were
user fees, in that the plaintiffs had the option of not driving on the tolled
MHS roads and tunnels, those who paid the MHS tolls enjoyed a particular-
ized benefit not enjoyed by those who only traveled on nontolled roads,
and the tolls were collected to compensate the authority for expenses
incurred in operating the MHS rather than to raise revenues for the Com-
monwealth; and where, even assuming that the tolls were a tax, they would
pass State constitutional muster, in that the imposition of tolls on only
some of the MHS roads and tunnels was authorized by the Legislature, as
was the expenditure of these toll revenues to cover the expenses of the
entire MHS; such use of the toll revenues was well within the limits of art.
78 of the Amendments to the Massachusetts Constitution, as amended by
art. 104 of the Amendments; and no other constitutional provision rendered
the expenditure of toll revenues unconstitutional. [704-711]
In a civil action against the Massachusetts Turnpike Authority, brought by five
Massachusetts residents who had paid tolls on the Metropolitan Highway
System (MHS) for at least five years, contending that tolls collected from
drivers traveling on the Boston extension of the Massachusetts Turnpike
and through tolled tunnels were unconstitutional to the extent the tolls
were spent on nontolled portions of the MHS, the amended complaint
failed to state a claim of violation of the dormant commerce clause of the
United States Constitution, given that the tolls reflected a reasonable and
nonexcessive approximation of the value of use of the MHS. [711-714]

CIVIL ACTION commenced in the Superior Court Department on
May 8, 2009.

[1]Douglas J. Barth, Robert Ackley, and Joel A. Feingold.

[2]Of the Massachusetts Turnpike Toll Equity Trust.

[3]Jack Altshuler, trustee of the Massachusetts Turnpike Toll Equity Trust
(trust).

A motion to dismiss was heard by *Herman J. Smith, Jr.*, J., and the case was reported by him to the Appeals Court.

The Supreme Judicial Court granted an application for direct appellate review.

*Donald M. Griswold* (*Orestes G. Brown* with him) for the plaintiffs.

*Kenneth W. Salinger*, Assistant Attorney General, for the defendant.

*Richard P. Schweitzer*, of the District of Columbia, *Richard Pianka & Prasad Sharma*, of Virginia, & *Mark K. Molloy*, for American Trucking Associations, Inc., & others, amici curiae, submitted a brief.

GANTS, J. The issue presented in this case is whether the Massachusetts Turnpike Authority (authority) lawfully was permitted to use toll revenues collected from users of tolled roads and tunnels in the Metropolitan Highway System (MHS) to pay for overhead, maintenance, and capital costs associated with the MHS's nontolled roads, bridges, and tunnels. We conclude that it was.[4]

*Background.* Before 1997, the authority owned and operated the Massachusetts Turnpike (turnpike),[5] the Boston extension of the turnpike,[6] and the Sumner and Callahan Tunnels, which cross under Boston Harbor to connect downtown Boston to the East Boston section of Boston. In 1997, while the massive Boston Central Artery/Tunnel Project known as the "Big Dig" was underway, the Legislature placed within authority stewardship "the integrated system of roadways, bridges, tunnels," and other facilities known as the MHS, which included the Boston extension and the tunnels it had owned and operated before, as well as the central artery, the central artery north area (CANA),

---

[4]We acknowledge the amicus brief jointly filed by the American Trucking Associations, Inc.; Massachusetts Motor Transportation Association; and National Private Truck Council.

[5]The Massachusetts Turnpike includes the tolled portion of Interstate Route 90 that runs eastward from West Stockbridge to Weston, ending at its intersection with Route 128.

[6]The Boston extension includes the tolled portion of Interstate Route 90 that runs eastward from Weston to Boston, ending at its intersection with Interstate Route 93.

and the Ted Williams Tunnel. G. L. c. 81A, § 3.[7] The authority
was authorized to charge tolls "for transit over or through the
[MHS] or any part thereof," and to fix and adjust the tolls so
that, when supplemented by other revenues,[8] they pay all the
expenses of the MHS. G. L. c. 81A, § 10 (b). The authority
required drivers of vehicles traveling through the Sumner and
Williams Tunnels, and the Weston and Allston-Brighton inter-
changes of the Boston extension, to pay a toll, but did not charge
a toll to drivers traveling through the Callahan Tunnel, the central
artery, or the CANA.

In May, 2009, the plaintiffs, each of whom is a Massachusetts
resident who has paid tolls on the MHS for at least five years,
filed suit against the authority, contending that tolls collected
from drivers traveling on the Boston extension and through the
tolled tunnels were unconstitutional to the extent they were spent
on the nontolled portions of the MHS.[9] The plaintiffs allege that
approximately fifty-eight per cent of toll revenues from the MHS
were used to pay the costs of nontolled MHS facilities.[10] They
claim that this percentage of "excess" toll revenues is an uncon-
stitutional tax in violation of art. 2, § 7, of the Amendments to
the Massachusetts Constitution; Part II, c. 1, § 1, art. 4, of the
Massachusetts Constitution; and art. 30 of the Massachusetts
Declaration of Rights, and of the commerce clause of the United
States Constitution. They seek an accounting and disgorgement
of all monies (estimated to exceed $440 million) collected as an
unlawful tax, to be paid to the Massachusetts Turnpike Toll Equity
Trust (trust) on behalf of the putative class. The plaintiffs also

---

[7]General Laws c. 81A was enacted in 1997. St. 1997, c. 3, § 6. It was
repealed in 2009. St. 2009, c. 25, § 75.

[8]The Legislature provided that the Commonwealth would pay the Mas-
sachusetts Turnpike Authority (authority) $25 million annually to defray the
costs of the central artery. G. L. c. 81A, § 12 (c).

[9]The plaintiffs filed the action as representatives of a putative class of driv-
ers who pay tolls to use the Metropolitan Highway System (MHS), but the
class has not been certified.

[10]Because we review the allowance of a motion to dismiss, we accept as
true the factual allegations in the amended complaint. We note that the author-
ity contends that the plaintiffs erred in their calculation of this percentage and
that, assuming the plaintiffs' data are correct, the percentage is approximately
forty-seven per cent.

sought an injunction forbidding the authority's use of any future toll monies to pay for expenditures for nontolled facilities.[11]

In January, 2011, the judge allowed the authority's motion to dismiss. He noted that "toll-paying MHS users benefit in a manner not shared by other members of society insofar as they alone are entitled to use the particular roadways on which the tolls are collected, and they receive the benefit of privileged access to the Central Artery from these roadways." Although he recognized that it was "not an easy issue," the judge concluded that the plaintiffs had no constitutional entitlement to the expenditure of toll revenues solely on tolled facilities. He declared: "Given the unique nature of an integrated highway system, with its ever-changing classes of users, the challenged toll scheme — although clearly flawed — does not appear to be an unreasonable way of dealing with the challenges of financing an interconnected series of roadways in the face of a severe shortage of funds."[12] The plaintiffs filed a timely notice of appeal and we granted their application for direct appellate review.[13] We now affirm the judge's allowance of the motion to dismiss.

*Discussion.* a. *State constitutional claims.* We have decided numerous cases where a charge that is characterized as a fee by a municipality or a State or local board is claimed to be an unconstitutional tax. See, e.g., *Denver St. LLC* v. *Saugus, ante* 651 (2012) (*Denver St.*) (town requires payment of inflow and infiltration charge to obtain permit for new sewer connections);

---

[11]In 2009, while this case was pending, the Legislature enacted new legislation that rendered the injunctive claim moot by requiring all revenue received from tolls to be "applied exclusively to" costs associated with tolled roads. G. L. c. 6C, § 13 (*c*), inserted by St. 2009, c. 25, § 8. See St. 2009, c. 27, § 138, as amended by St. 2009, c. 32, § 2. In 2009, the Legislature repealed G. L. c. 81A (see note 7, *supra*), the act that established the authority, established the Department of Transportation (department) in its place, and transferred the authority's responsibilities and employees to the department. See St. 2009, c. 25, §§ 8, 75, 134, 137-139, 142-143, 147.

[12]The judge did not specifically address the commerce clause claim in dismissing the amended complaint, but the plaintiffs did not seek reconsideration.

[13]The judge declared that he was "troubled as to whether evidence of 'free-riding' is a relevant consideration" and sought to report his decision under Mass. R. Civ. P. 64 (a), 365 Mass. 831 (1974). But because he allowed the motion to dismiss as to all claims, and a judgment issued, the plaintiffs properly proceeded by entering an appeal from the judgment. See *Cusic* v. *Commonwealth*, 412 Mass. 291, 293 (1992).

*Silva* v. *Attleboro*, 454 Mass. 165 (2009) (*Silva*) (towns assess charge for issuance of burial permit); *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196 (1995) (State board responsible to ensure proper disposal of low-level radioactive wastes annually assesses persons licensed to possess, use, or transfer radioactive materials amount sufficient to defray board's annual costs); *Bertone* v. *Department of Pub. Utils.*, 411 Mass. 536 (1992) (municipal lighting plant's "hook-up charge" for new connections to system); *Southview Coop. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395 (1985) (city's rent control board assesses charge based on percentage of rents and capital improvements for landlord to file petition for rent adjustment); *Emerson College* v. *Boston*, 391 Mass. 415, 416, 419 (1984) (*Emerson College*) (Legislature conferred on city authority to impose additional charge to property owners of buildings requiring "fire fighting capacity" that exceeds 3,500 gallons per minute for "augmented fire services availability"). In each of these cases, if the fee were truly a tax, it would be unconstitutional because the relevant governmental entity had not been authorized by the Legislature to levy, assess, or collect a tax, see, e.g., *Silva, supra* at 168-169; or because it would be a property tax that was not proportional or reasonable, see *Emerson College, supra* at 418 & n.5. In determining whether a charge functions as a fee rather than a tax, we recognize that there are two types of fees: user fees, where a fee is assessed for the use of the governmental entity's property or services; and regulatory fees, where a fee is assessed as part of government regulation of private conduct. See *Denver St., supra* at 652; *Emerson College, supra* at 424-425. Where a charge is characterized as a user fee, we determine whether the charge satisfies three criteria: (1) it is charged "in exchange for a particular government service which benefits the party paying the fee in a manner 'not shared by other members of society,' " (2) it is "paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge," and (3) it is not collected "to raise revenues but to compensate the governmental entity providing the services for its expenses." *Denver St., supra*, quoting *Emerson College, supra*.[14]

---

[14] In *Silva* v. *Attleboro*, 454 Mass. 165, 172 (2009), we concluded that the

Here, too, the plaintiffs claim that the MHS tolls are unconstitutional taxes. But the plaintiffs acknowledge that the Legislature authorized the authority "to charge and collect" tolls for travel on the MHS, G. L. c. 81A, § 10 (b), and that these tolls are constitutional to the extent they are used solely to pay the costs of tolled roads and tunnels in the MHS. They contend that the tolls become an unconstitutional tax where they are used to pay the costs of the nontolled roads, tunnels, and bridges. In other words, according to the plaintiffs, the tolls are lawful user fees when applied to pay the expenses of the tolled roads and tunnels, but an unconstitutional tax when applied to pay the expenses of the nontolled roads, tunnels, and bridges.

To prevail, the plaintiffs' State constitutional claims must pass through two jurisprudential checkpoints. First, in collecting tolls on only certain parts of the MHS and using those toll revenues to pay the expenses of the entire MHS, the authority was doing precisely what the Legislature authorized it to do. In G. L. c. 81A, § 10 (b), the Legislature authorized the authority to "charge and collect" tolls "for transit over or through the [MHS] *or any part thereof*" (emphasis added), thus allowing the authority to charge tolls on only part of the MHS. And the Legislature mandated that the authority fix and adjust the amount of the tolls so that, together with any other revenue collected, they yield an amount that will cover the costs of the entire MHS, not just the tolled portions, including principal and interest on bonds associated with the MHS. See *id.* ("Such tolls *shall be so fixed and adjusted* as to provide, *at a minimum*, a fund sufficient with other revenues, if any, to pay [a] costs incurred . . . related to the [MHS] including, but not limited to, the cost of owning, constructing, maintaining, . . . improving, . . . policing, [and] administering . . . the [MHS]; and [b] the principal . . . and the interest on notes or bonds relating to the [MHS]" [emphasis added]). Contrast G. L. c. 6C, § 13 (c), inserted by St. 2009, c. 25, § 8 (effective July 1, 2009, tolls collected "shall be applied exclusively" for costs related to

second factor is "of no relevance" in determining whether a regulatory charge is a fee or a tax, and may retain relevance only where applied to user fees. See *Denver St. LLC* v. *Saugus, ante* 651, 656 n.6 (2012) ("The *Silva* case left to another day whether voluntariness was useful where . . . the fee is proprietary").

tolled infrastructure). That a governmental entity acts in accordance with the authority granted to it by the Legislature does not resolve the constitutional challenge, because the legislative authority may itself be unconstitutional, see, e.g., *Emerson College*, *supra* at 428, but the "statute is presumed to be constitutional and every rational presumption in favor of the statute's validity is made." *Gillespie* v. *Northampton*, 460 Mass. 148, 152 (2011), quoting *Pielech* v. *Massasoit Greyhound, Inc.*, 441 Mass. 188, 193 (2004).

Second, art. 78 of the Amendments to the Massachusetts Constitution, as amended by art. 104 of the Amendments, provides that "revenue from fees, duties, excises or license taxes relating to . . . operation or use of vehicles on public highways" shall not be expended except to pay the various expenses of public highways and bridges, including the cost of construction, maintenance, and repair, "and mass transportation lines and . . . other mass transportation purposes."[15] Although art. 78 is phrased as a limitation on expenditures, we have recognized that embedded in such a limitation is a constitutional recognition of the Legislature's power to impose such fees and to allocate the revenues to any of the permitted purposes. See *Mitchell* v. *Secretary of Admin.*, 413 Mass. 330, 333-334 (1992) ("Article 78 requires only that art. 78 revenues be expended for certain transportation-related purposes, and contains a broad delegation of power to the Legislature to 'direct' the 'manner'

---

[15]The full text of art. 78 of the Amendments to the Massachusetts Constitution, as amended by art. 104 of the Amendments, provides:

"No revenue from fees, duties, excises or license taxes relating to registration, operation or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than cost of administration of laws providing for such revenue, making of refunds and adjustments in relation thereto, payment of highway obligations, or cost of construction, reconstruction, maintenance and repair of public highways and bridges, and mass transportation lines and of the enforcement of state traffic laws, and for other mass transportation purposes; and such revenue shall be expended by the commonwealth or its counties, cities and towns for said highway and mass transportation purposes only and in such manner as the general court may direct; provided, that this amendment shall not apply to revenue from any excise tax imposed in lieu of local property taxes for the privilege of registering such vehicles."

in which this goal shall be attained"); *O'Brien* v. *State Tax Comm'n*, 339 Mass. 56, 64 (1959) ("art. 78 is a clear constitutional recognition of the Legislature's power" to impose excise taxes "in its efforts to provide revenues to meet the heavy and varied costs of government created by motor vehicles"). Under art. 78, there is no constitutional prohibition against toll revenues from certain highways and tunnels being used to pay the expenses of other highways and tunnels, or even mass transportation expenses. See, e.g., *Opinion of the Justices*, 370 Mass. 895, 896, 900 (1976) ("construction and maintenance of bikeways and bicycle parking facilities, to be paid for [in part by] one per cent of revenues and excises on motor vehicle use and fuel" held constitutional).

Where, as here, the imposition of tolls on only some of the MHS roads and tunnels was authorized by the Legislature under G. L. c. 81A, § 10 (*b*), as was the expenditure of these toll revenues to cover the expenses of the entire MHS, and where this use of toll revenues is well within the limitations of art. 78, the plaintiffs may prevail on their State constitutional claims only if they can demonstrate that the use of MHS tolls to pay expenses on nontolled MHS roads, tunnels, and bridges is prohibited by another constitutional provision. In their amended complaint, they identify three constitutional provisions, but none renders unconstitutional the expenditure of toll revenues that art. 78 approves as constitutional.

First, art. 2, § 7, provides that a city or town does not have the power to levy, assess, or collect taxes unless such power is granted by the Legislature in conformity with the Constitution. Even if, as the plaintiffs claim, the MHS tolls became a tax when the revenues were expended on nontolled roads and tunnels, the power to "tax" was granted by the Legislature, and their expenditure conformed with art. 78.

Second, Part II, c. 1, § 1, art. 4, provides that the Legislature may "impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying" within the Commonwealth, and may "impose and levy reasonable duties and excises, upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within" the Commonwealth. If the MHS tolls were truly a "tax," they

would not be a tax on real property, so the constitutional mandate that they be proportional and reasonable would not apply. See *Opinion of the Justices,* 378 Mass. 802, 802-803 (1979) (Part II, c. 1, § 1, art. 4, places "constitutional constraints on taxation of *real* property" [emphasis added]). See also *Emerson College, supra* at 418 n.5. And if the tolls were a "tax," they could constitutionally be deemed an excise tax. In *Opinion of the Justices,* 250 Mass. 591, 597 (1925), this court declared that, where tolls "are based on fair recompense for the public moneys expended for initial construction and for adequate maintenance, they do not involve the power of taxation," and are user fees, resting "on the rights of the Commonwealth as proprietor of the instrumentalities used." But where the revenue from such tolls is not applied to the maintenance and repair of highways but are retained without restriction, they are excise taxes. *Id.* The Legislature is empowered by Part II, c. 1, § 1, art. 4, to impose a highway toll as an excise tax. *Id.* at 599 ("As matter of abstract principle we are of opinion that it is within the constitutional power of the General Court to levy an excise as a toll for the use of public ways by motor vehicles").[16] Art. 78, therefore, acts as a constitutional constraint on the legislative power under Part II, c. 1, § 1, art. 4, to establish tolls as excise taxes, limiting the use of such toll revenues to support public highways, bridges, and tunnels, and mass transportation.

Third, art. 30 provides that "the executive [department] shall never exercise the legislative . . . powers." The plaintiffs allege in their amended complaint that the Legislature did not authorize the authority to tax but that, even if the Legislature did attempt to delegate the power of taxation, "any attempted delegation was done invalidly, improperly and impermissibly as the rules of delegation were not followed." In *Commonwealth* v. *Clemmey,* 447 Mass. 121, 135 (2006), quoting *Chelmsford Trailer*

---

[16] In *Opinion of the Justices,* 250 Mass. 591, 597 (1925), quoting *Portland Bank* v. *Apthorp,* 12 Mass. 252, 256 (1815), the court noted that the "term 'excise' is of very general signification, meaning tribute, custom, tax, tollage, or assessment." The court added: "Toll — at that time a word in common use in connection with turnpikes and bridges — thus was mentioned more than one hundred years ago, in the first decision requiring a critical consideration of the meaning of the word 'commodities' in the Constitution, as an illustration of an excise." *Opinion of the Justices, supra* at 598.

*Park* v. *Chelmsford,* 393 Mass. 186, 190 (1984), we noted that "[n]o formula exists for determining whether a delegation of legislative authority is 'proper' or not," but three factors "bear on our determination: (1) [d]id the Legislature delegate the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of statutory standards or, if the local authority is to develop the standards, sufficient guidance to enable it to do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled?" Applying these factors, we see no impropriety in the legislative delegation to the authority, pursuant to G. L. c. 6C, § 13 (*a*), to "fix and revise tolls" for travel in the MHS where the amount of the tolls was limited to the amount necessary, with other revenues, to pay all the costs of the MHS, including the interest and principal on bond notes, and where the authority was required to convene at least two public hearings before any proposed change in the MHS tolls, followed by a one-week comment period, and to submit an annual report to the Governor and Legislature with "a complete operating and financial statement." G. L. c. 81A, § 20. See G. L. c. 81A, § 10 (*b*) ("subject to provisions of [G. L. c. 81A, § 4 (*j*)]").[17]

Although the MHS tolls would still pass State constitutional muster if they were a "tax," we conclude that, applying the traditional three-factor analysis first articulated in *Emerson College, supra* at 424-425, they were actually user fees. The plaintiffs concede that the second factor is satisfied, in that they had the option of not driving on tolled MHS roads and tunnels and thereby could avoid paying the tolls. The first factor is also met because those who paid the MHS tolls enjoyed a particularized benefit

---

[17]We recognize that G. L. c. 81A, § 10 (*b*), provided that MHS tolls "shall be so fixed and adjusted as to provide, at a minimum, a fund sufficient with other revenues to pay" the entirety of MHS expenses, but we do not understand the phrase "at a minimum" to have given the authority free rein to set tolls above the amount necessary to pay MHS expenses. Rather, we understand that the phrase means that the authority was expected to act conservatively to ensure that the tolls were sufficient to meet MHS expenses and, if the tolls exceeded that amount, the overage was to be treated as reserves to be allocated to pay MHS expenses in the following year.

not enjoyed by those who only traveled on nontolled roads; only toll payers could travel on the Boston extension, and the Sumner and Williams Tunnels, and enter the nontolled central artery of the MHS through these roadways. In contrast, nontoll paying drivers must reach the central artery by other means, find an alternative to the route served by the Boston extension, and take a less direct route to travel from East Boston to Boston.

The MHS tolls satisfy the third factor, because they were collected to compensate the authority for the expenses incurred in operating the MHS (and limited by statute to the amount necessary to pay those expenses), not to raise revenues for the Commonwealth. Where, as here, a public authority manages an integrated system of roadways, bridges, and tunnels, and chooses to impose tolls on only some of the roadways and tunnels in an amount sufficient to support the entire integrated system, its purpose does not shift from expense reimbursement to revenue raising simply because the toll revenues exceed the cost of maintaining only the tolled portions of the integrated system. See *Opinion of the Justices*, 250 Mass. 591, 597 (1925). Nor must every road, bridge, and tunnel in an integrated system of roadways, bridges, and tunnels be tolled to enable the tolls collected to support the expenses of the entire integrated system without being deemed taxes.[18]

Because we conclude that the tolls collected by the authority on the MHS were fees, and because we conclude that they would still be constitutional excise taxes even if they were taxes, we affirm the dismissal of the plaintiffs' State constitutional claims.

b. *Federal constitutional claims.* The commerce clause provides that "congress shall have power . . . to regulate com-

---

[18]Because the collection of tolls requires drivers either to stop or, with a "Fast Lane" or "E-ZPass" transponder, slow down, at a toll booth in a toll plaza, the authority was entitled to consider traffic patterns and the potential for traffic delay in deciding which roads, bridges, and tunnels within the MHS should be tolled. If we accepted the plaintiffs' logic, the authority's decision not to place toll booths at the entrance to the Callahan Tunnel in the North End section of Boston (which Boston residents use to travel to Logan International Airport in East Boston), and instead place toll booths in East Boston at the entrance to the Sumner Tunnel to collect tolls from those returning from the airport, would mean that Sumner Tunnel tolls could support maintenance and repair of the Sumner Tunnel but not the Callahan Tunnel, lest the tolls be deemed revenue-raising taxes.

merce . . . among the several states." Art. I, § 8, cl. 3, of the United States Constitution. The clause has long been understood to have a negative implication that "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Perini Corp.* v. *Commissioner of Revenue*, 419 Mass. 763, 767, cert. denied sub nom. *Adams* v. *Perini Corp.*, 516 U.S. 822 (1995). See *Department of Revenue of Ky.* v. *Davis*, 553 U.S. 328, 337 (2008) (*Davis*). See generally *Opinion of the Justices*, 428 Mass. 1201, 1203-1211 (1998). In determining whether there has been a violation of this "negative command, known as the dormant Commerce Clause," *Capital One Bank* v. *Commissioner of Revenue*, 453 Mass. 1, 10, cert. denied, 557 U.S. 919 (2009), quoting *Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995), we ask first whether the restriction on commerce is discriminatory, in that it treats in-State and out-of-State economic interests differently and benefits the former and burdens the latter. *Oregon Waste Sys., Inc.* v. *Department of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994). If discriminatory, "it is virtually per se invalid" and may survive judicial scrutiny only if "it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 99, 101, quoting *New Energy Co. of Ind.* v. *Limbach*, 486 U.S. 269, 278 (1988). See *Davis*, *supra* at 338. If nondiscriminatory, it is invalid only if it imposes a burden on interstate commerce that "is clearly excessive in relation to the putative local benefits." *Id.* at 338-339, quoting *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

The plaintiffs do not allege that the authority's collection or use of MHS toll revenues discriminates against interstate commerce. Instead, they claim the tolls nonetheless violate the dormant commerce clause because they are "excess[ive]" and "do not represent a fair approximation of the benefits provided by the [authority]." The plaintiffs allege that they have been deprived of the "rights, privileges, and immunities" secured by the dormant commerce clause, and seek damages and attorney's fees under 42 U.S.C. § 1983 (2006). See *Dennis* v. *Higgins*, 498 U.S. 439, 450-451 (1991) (violations of dormant commerce clause included in "rights, privileges, or immunities" protected by § 1983).

We need not address the more difficult issue whether the plaintiffs have standing to bring a dormant commerce clause claim in a putative class action where the putative class members are residents of Massachusetts, New Hampshire, or Rhode Island but the plaintiffs all reside in Massachusetts, and where the amended complaint does not allege that any plaintiff traveled on the MHS in interstate commerce, because we conclude that the amended complaint plainly fails to state a dormant commerce clause claim. It is "settled that a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance may constitutionally be imposed on interstate and domestic users alike." *Evansville-Vanderburgh Airport Auth. Dist.* v. *Delta Airlines, Inc.*, 405 U.S. 707, 714 (1972) (*Evansville*). Where a State imposes a reasonable toll that is "fixed according to some uniform, fair and practical standard," *id.* at 713, quoting *Hendrick* v. *Maryland*, 235 U.S. 610, 624 (1915), and that "is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster." *Evansville*, *supra* at 717. See *Doran* v. *Massachusetts Turnpike Auth.*, 256 F. Supp. 2d 48, 55 (D. Mass.), aff'd, 348 F.3d 315 (1st Cir. 2003), cert. denied, 541 U.S. 1031 (2004) (dismissing dormant commerce clause challenge to "Fast Lane" transponder program providing discount on MHS tolls).

Here, the authority "need not demonstrate that the toll fee exactly equals the costs of maintenance or the benefits conferred; all that is required is that the tolls 'reflect a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed.' " *Cohen* v. *Rhode Island Turnpike & Bridge Auth.*, 775 F. Supp. 2d 439, 449-450 (D.R.I. 2011), quoting *Evansville*, *supra* (rejecting dormant commerce clause challenge to bridge tolls). Where the MHS tolls were required by statute to be used to pay the costs of the entire MHS integrated system of roads, tunnels, and bridges, and where there is no allegation that they were put to a use prohibited by the statute or that the toll revenues exceeded the total cost of the MHS, the tolls reflect a reasonable and nonexcessive approximation of the value of use of the MHS. See *Wallach* v. *Brezenoff*, 930 F.2d 1070, 1072 (3d Cir. 1991)

(rejecting dormant commerce clause challenge to toll increase where "tolls are not excessive in relation to the costs of the Port Authority's Interstate Transportation Network as a whole"); *Bridgeport & Port Jefferson Steamboat Co.* v. *Bridgeport Port Auth.,* 567 F.3d 79, 87 (2d Cir. 2009), cert. denied, 130 S. Ct. 1075 (2010) ("user fee . . . may reasonably support the budget of a governmental unit that operates facilities that bear at least a 'functional relationship' to facilities used by the fee payers"). The plaintiffs' dormant commerce clause claim and its related § 1983 claim were properly dismissed.

*Conclusion.* We affirm the judge's dismissal of the amended complaint.

*So ordered.*