Botsford, J.
In the last four months of 1998, the defendant, Linear Technology Corporation (Linear) hired the seven individual defendants, all of whom had been employed as design engineers by the plaintiff, Unitrode Corporation (Unitrode). This action arises out of Linear’s hiring of the seven. In particular, Unitrode brings claims of tortious interference with advantageous business relationships against Linear (Count I); misappropriation of trade secrets and confidential information against all defendants (Count II); violation of G.L.c. 93A against Linear (Count 111); breach of contract against the individual defendants Bazinet, Loconto, Hack, Ziegler and Jordan (Count IV); and injunctive relief against all defendants (Count V).
All defendants have moved to dismiss the complaint. The individual defendants Loconto, Belch, Martin, Hack and Ziegler move to dismiss for lack of personal jurisdiction under Mass.R.Civ.P. 12(b)(2), and they also move, along with the defendants Bazinet and Jordan, to dismiss for failure to state a claim under Rule 12(b)(6). Linear has filed a separate motion to dismiss under Rule 12(b)(6). Unitrode opposes both motions.

BACKGROUND

Unitrode’s first amended complaint alleges the facts summarized below, all of which are taken as true for purposes of considering the Rule 12(b)(6) motions. Also summarized here are the jurisdictional facts set out in affidavits filed by the five individual defendants who are moving to dismiss for lack of personal jurisdiction.
Unitrode is a Maryland corporation with a principal place of business in Merrimack, New Hampshire. Linear is a California corporation with a principal place of business in Milpitas, California. Linear has a place of business in Burlington, Massachusetts, and in Bedford, New Hampshire. Unitrode and Linear both design, manufacture, market and sell high performance linear integrated circuits that are used in a variety of applications in electronic data processing and computers. The two companies are direct competitors.
All seven individual defendants worked for Unitrode before April 24, 1998 as design engineers for integrated circuits. At that time, Unitrode employed 19 designers, including the seven defendants, at its main facility in Merrimack, New Hampshire. At Unitrode, Bazinet and Jordan both acted as design team leaders with supervisory responsibility over other designers. The remaining five individual defendants worked together in design teams at Unitrode. Bazinet designed the Unitrode products, UC 1874 and UC 1582, and Jordan designed the Unitrode product, UCC 39421.
On April 24, 1998, Bazinet left Unitrode and went to work at CP Clare Corporation (CP Clare). On June 2, 1998 Jordan left Unitrode and followed Bazinet to CP Clare. At the end of September or early in October of 1998, both Bazinet and Jordan left CP Clare and went to work for Linear at its Burlington, Massachusetts facility. After contact with Bazinet or Jordan, or both, in November 1998, Martin, Loconto and Belch all left Unitrode to work for Linear. Ziegler and Hack left Unitrode in December 1998 to work for Linear. By that December, all seven former Unitrode employees were working for Linear at its new satellite facility in Bedford, New Hampshire.[2]
In June 1997, Linear filed a patent suit in California against Unitrode and others, alleging infringement of a patent held by Linear. This patent litigation implicates certain products (UC 1874 and UC 1582; UCC 39421) that were designed respectively by Bazinet and Jordan. From January 1997 through the spring of 1998, as leaders of the design teams for the products involved in the California patent suit, Bazinet and Jordan participated in privileged discussions with lawyers for Unitrode who were working on the case. On September 1, 1998 (after Bazinet and Jordan had left Unitrode for C.P. Clare), Unitrode’s outside counsel told Bazinet and Jordan that they would be designated as Rule 30(b)(6) witnesses for Unitrode in the litigation. Bazinet and Jordan initially expressed no reservations regarding the designation, but on September 30, 1998, Bazinet informed Unitrode’s counsel that he and Jordan could no longer participate in the litigation. By this date, Bazinet and Jordan had been *146 offered jobs at Linear. Unitrode alleges that Linear hired Bazinet and Jordan in order to undermine Unitrode’s ability effectively to defend against the patent litigation, which is crucial to Unitrode’s ability to compete in the market for linear/analog integrated circuits for small, low power, electronic devices.
All of the seven defendants, because of their roles in product design, had access to confidential information and trade secrets of Unitrode to varying extent. This information ranged from marketing and pricing to product design and strategy. It included Unitrode operations, production capabilities and client base. The defendants often worked on Unitrode projects at home, with approval from Unitrode. When they left Unitrode’s employment, Bazinet, Loconto and Jordan retained Unitrode documents such as notes from meetings about marketing, schematic drawings, and notes on design. While at C.P. Clare, Bazinet solicited information by e-mail from Jordan (who was still at Unitrode), about new products and about a Unitrode product called “Hot Swap.” Jordan destroyed documents in his possession upon hearing that he was a defendant in this suit.
Loconto, Belch, Martin, Hack and Ziegler are all residents of New Hampshire, and have been at all times relevant to this action. None of the five has ever lived in Massachusetts or worked in Massachusetts, and none has any business contacts with the Commonwealth. When employed by Unitrode, these five defendants all worked at Unitrode’s facility in Merrimack, New Hampshire, and, as indicated above, since being employed by Linear, they have only worked at Linear’s facility in Bedford, New Hampshire. Each of the five defendants visited Linear’s facility in Burlington, Massachusetts on one occasion during the course of applying to Linear but before Linear formally interviewed them or hired them. The purpose of each defendant’s visit was to speak with Bazinet and other Linear employees. However, each of the five actually interviewed for a position with Linear either in New Hampshire or in California. Specifically, Loconto filled out his employment application for Linear in New Hampshire, and interviewed for his position with Bob Dobkin in New Hampshire. The same is true of Belch, Martin and Hack. Ziegler filled out an employment application on the Linear website, and actually interviewed in California for a position with the company.
DISCUSSION
1. Motion to Dismiss Under Mass.R.Civ.P. 12(b)(2).
When confronted with a motion to dismiss under Mass.R.Civ.P. 12(b)(2), the plaintiff bears “the burden of establishing the facts upon which the question of personal jurisdiction over the defendant is to be determined.” Nicholas Assoc., Inc. v. Starr, 4 Mass.App.Ct. 91, 93 (1976). See Droukas v. Divers Training Academy,Inc., 375 Mass. 149, 151 (1978). The facts of each controversy determine whether personal jurisdiction can be maintained over foreign defendants. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 2-3 (1979). When the defendant is a nonresident, the court must determine (1) whether jurisdiction is authorized under the state’s longarm statute, G.L.c. 223A, §3, and (2) whether the exercise of such jurisdiction comports with the due process requirements of the United States Constitution. Id., at 5-6; Tatro v. Manor Care, Inc., 416 Mass. 753, 767 (1994); Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F.Sup. 1106, 1109 (D.Mass. 1983). In resolving the issue of personal jurisdiction, I take as true only the uncontroverted facts as they appear in the materials before me. Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH& Co. Kg., 26 Mass.App.Ct. 14, 16 (1988).
Unitrode alleges in its amended complaint that Loconto, Belch, Martin, Hack and Ziegler left Unitrode to go to work for Linear at its facility in Massachusetts. The affidavits filed by each of the five state, however, that each has always worked for Linear at its New Hampshire facility, and Unitrode does not now suggest otherwise. Rather, Unitrode argues that it is proper for Massachusetts to assert personal jurisdiction over the five defendants based on the one visit each of them made to Linear’s Burlington facility during the course of the hiring process. I disagree.
Unitrode relies on G.L.c. 223A, §3(a) as the statutory vehicle on which it asserts personal jurisdiction over the five defendants. Section 3(a) provides:
A court may exercise personal jurisdiction over a person ... as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth . . .
What the uncontroverted facts show is that the five defendants’ contacts with Massachusetts were confined to the visit each made to Linear’s Burlington facility in the fall of 1998 before being hired.[3] Attendance at a single meeting, even if the meeting’s purpose were to discuss aspects of the job that each defendant was in the process of applying for, does not rise to the level of transacting business in the Commonwealth. Each defendant applied for the job in New Hampshire, had his actual job interview in New Hampshire or California, and, I infer,[4] accepted the job offer in New Hampshire.
Moreover, Unitrode must show not only that the defendants transacted business in Massachusetts, but that its causes of action against these defendants arose out of their Massachusetts business transactions. See, e.g., New Hampshire Ins. Guar. Ass’n v. Markem Corp., 424 Mass. 344, 347 (1997) (“(p)ersonal jurisdiction [under G.L.c. 223A, §3(a)] is limited to causes of action arising out of the business the person sought to be reached transacts in the State and does not extend to all persons transacting any business at all in the State”). See also A-Connoisseur Trans. Corp. v. Celebrity Coach, 742 F.Sup. 39 (D. Mass. 1990). Unitrode argues that its claims arise out of the five *147 defendants’ hiring by Linear. In my view, this is a somewhat questionable proposition,[5] but I accept for argument such a characterization of the claims. In this context, in order to assert personal jurisdiction over the defendants in the Commonwealth, Unitrode must show either that the defendants were hired by Linear in Massachusetts or that they work for Linear in this State. Cf. id., at 349 (plaintiff insurance guaranty fund brought action in Massachusetts for declaratory judgment that it had no duty to defend or indemnify the defendant insured, a New Hampshire company doing business in New Hampshire; court ruled that to establish personal jurisdiction over defendant company, plaintiff must prove that the insured contracted for the insurance policy in question in Massachusetts or that the activity insured by the policy occurred here). On the record presented, Unitrode cannot meet this burden.[6] The five defendants’ motion to dismiss for lack of personal jurisdiction should be allowed.[7]
II. Motions to Dismiss Under Mass. R. Civ. P. 12(b)(6).[8]
Dismissals on the basis of pleadings, before facts have been found, are discouraged. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true its well pleaded factual allegations as well as any inference which can be drawn therefrom in the plaintiffs favor. Id. A complaint is not subject to dismissal if it could support relief under any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). Further, a complaint should not be dismissed simply because it asserts a new or extreme theory of liability. Bell v. Mazza, 394 Mass. 176, 183 (1985); New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28 (1988); Jenkins v. Jenkins, 15 Mass.App.Ct. 934 (1983). All inferences are to be drawn in the plaintiffs favor, and the complaint “is to be construed so as to do substantial justice.” Ourfalian v. Aro Mfg Co., 31 Mass.App.Ct. 294, 296 (1991).
On a motion to dismiss, consideration of factual information outside of the complaint is generally not permitted, and this case is not one in which it would be appropriate to convert the motions to dismiss into motions for summary judgment pursuant to Rule 12 (b). Accordingly, the affidavits submitted by the defendants, including those submitted in support of the five individual defendants’ motion to dismiss for lack of personal jurisdiction, cannot be considered in ruling on the Rule 12(b)(6) motions.
Unitrode’s claim of tortious interference with advantageous business relationships against Linear (Count I of the first amended complaint) should not be dismissed. Linear’s argument that Unitrode must plead and prove that the individual defendants would have continued to work for Unitrode but for Linear’s interference is not a correct statement of the law. See, e.g., Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 397 (1996) (“[t]o establish intentional interference with contractual or business relations, the plaintiffs must show (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants’ knowledge of the contract or business relationship; (3) the defendants’ intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages”); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815-17 (1990). Nor is Unitrode required to plead or prove both improper purpose and means. Perhaps Unitrode may succeed at the summary judgment stage of this case in defeating this claim, but no one is there yet.
All defendants assert that Unitrode cannot prevail on its claim of misappropriation of trade secrets and confidential information (Count II of the first amended complaint) because it has not, and cannot, allege actual use of such information, but only that use is threatened and allegedly inevitable. While there may not be Massachusetts cases which have yet recognized the inevitable disclosure rule, none of the cases relied on by the defendants actually rejects it. Moreover, Unitrode does not base its claim on G.L.c. 93, §42A, as Linear appears to suggest. Certainly there are issues about whether Unitrode can ultimately prove the allegations of this count, and issues about whether in any event it can prove damages as against the two individual defendants. Cf. USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 340 (1984). However, these questions are not properly considered at this early stage of the litigation.
In fight of the fact that Unitrode’s tort claims against Linear will not be dismissed, its claim of violation of G.L.c. 93A (Count III) remains viable at this stage as well. As for the claim against Bazinet and Jordan for breach of contract (Count IV), it may be true that the employment contracts and termination agreements contain language barring only disclosure or personal use of trade secrets and confidential information. However, the complaint alleges that the defendants have used such information for their personal benefit (first amended complaint, ¶61), and Unitrode is entitled to a chance to prove the allegation.
Finally, the defendants are correct that Count V of the first amended complaint, seeking injunctive relief against all defendants, states a claim for a remedy, not a cause of action. Unitrode has set out a specific prayer for injunctive relief in the “prayers for relief’ section of its first amended complaint. Dismissal of Count V should occur because it adds nothing to the complaint that is not already there.

ORDER

For the foregoing reasons the motion of the defendants Loconto, Belch, Martin, Hack and, Ziegler to dismiss the first amended complaint as against them for lack of personal jurisdiction is ALLOWED; the *148 motions of the remaining defendants to dismiss Count V of the first amended complaint are ALLOWED; and the motions to dismiss of the defendants Linear Technology Corporation, John P. Bazinet and Mark G. Gordon are otherwise DENIED.

Bazinet’s deposition testimony indicates that Linear’s Bedford, New Hampshire facility opened on or about November 12, 1998. According to the five defendants’ affidavits, Loconto, who started work on November 23, 1998, was the first of the five defendants to begin work for Linear.

William Martin states in his affidavit that he has attended one meeting in Massachusetts since he started working at Linear, but there is no indication of what that meeting concerned and Unitrode does not appear to base any jurisdictional claim on this one contact.

I draw the inference from the fact that the defendants were all living and working in New Hampshire at the time.

Unitrode asserts two substantive claims against the five individual defendants, misappropriation of trade secrets and confidential information, and breach of contract. The argument that these claims arise out of Linear's hiring of the defendants depends on acceptance of the theory that disclosure of Unitrode’s alleged trade secrets is inevitable. The validity of such a theory as applied to the facts of this case is far from a foregone conclusion.

Even if these visits were adequate to satisfy the longarm statute, there is substantial doubt that they would constitute the requisite "minimum contacts” with Massachusetts to satisfy due process, or that the defendants’ actions caused them to “purposely avail themselves of the privilege of conducting activities within [Massachusetts], thus invoking the benefits and protections of its laws.” See generally Hanson v. Denckla, 357 U.S. 235 (1958); International Shoe Co. v. Washington, 326 U.S. 310 (1945). It raises a substantial question of fairness to hail the five defendants into a Massachusetts court over a dispute between two foreign corporations involving alleged transgressions in New Hampshire just because on one occasion the defendants traveled to Massachusetts to meet with certain employees of their future employer.

Unitrode argues that they should be permitted to conduct additional discovery on the jurisdictional issue before any ruling is made. This case is over one year old. I understand there was a period of time when the parties were engaged in settlement discussions, but discovery was conducted before the motion was initially filed. There appears to be no good reason to defer ruling on the motion at this time.

The defendants asserting Rule 12(b)(6) motions are Bazinet, Jordan, and Linear.